*599 OPINION.
Mellott:
The only question before us in whether the stock of the Idaho Copper Co. became worthless in 1937.
The respondent contends in his brief that the stock became worthless prior to January 1, 1937, and that, therefore, no loss Avag sustained by petitioners on account of such worthlessness in that year. In the examining officer’s report, attached to the deficiency notice, it is said: “It is held by the examining officer that all outstanding capital stock of Idaho Copper Company became worthless in 1933, when the sheriff’s deed was issued to Cooley Butler, covering all properties of Idaho Copper Company.”
Petitioner contends that the stock had some value at all times prior to January 1, 1937, and became worthless when, in that year, the company quitclaimed all of its right, title, and interest in the Ned Ledge mining properties as shown in our findings. His contention is grounded primarily on his assertion that the Ned Ledge mine, at all times material here, had a value substantially in excess of the amount of creditors’ claims against the Idaho Copper Co. He argues that the pending litigation, instituted before the Idaho Copper Co.’s equity of redemption under the foreclosure sale had expired, had the effect of postponing until 1937 the finality of the mortgage foreclosure and sale of the company’s property, so that in 1937 the company, having a right to repossess its properties under the conditions of the court’s interlocutory decree, had assets substantially in excess of the *600 amount of the creditors’ claims against it, which gave its stock some value., Consequently, he says, the stock which he owned did not become worthless until 1937, when the court issued its final decree and the Idaho Copper Co. quitclaimed away all of its interest in the Red Ledge property.
The applicable provisions of the statutes and regulations are set out in the margin.[1]
The statute permits a deduction of losses sustained during the taxable year. Therefore a deduction for worthless stock must be taken in the year in which it becomes worthless and not in a prior or subsequent year. Leigh Carroll, 20 B. T. A. 1029; Smith & Rumery Co., 21 B. T. A. 352. The time when worthlessness occurs is a question of fact which obviously must be determined in the light of all the surrounding circumstances.
Generally there is some event which evidences the destruction of value, John B. Marsh, 38 B. T. A. 878; but in any event actual 'worthlessness should be the test and the burden of proof is on the taxpayer to show that the loss which he claims was sustained in the taxable year in which he seeks to claim the deduction. Albert Y. Gowen, 24 B. T. A. 1028; affd., Gowen v. Commissioner, 65 Fed. (2d) 932; cer- *601 tiorari denied, 290 U. S. 687; Olds & Whipple, Inc. v. Commissioner, 75 Fed. (2d) 272.
Stock of a distressed corporation may have a potential value, even though it does not have a current liquidating value, if there is reasonable hope and expectation that in the future it may acquire a value through foreseeable operations. While such a potential value exists, the stock can not be said to be worthless. Sterling Morton, 38 B. T. A. 1270; affd., Morton v. Commissioner, 112 Fed. (2d) 320. See also Wesley V. E. Terhune, 40 B. T. A. 750. We are satisfied from the facts in this record that the stock of the Idaho Copper Co., at all times material here, had a substantial potential value, which was not wiped out by the foreclosure sale of the Red Ledge mining property and the transfer of the property by sheriff’s deed to Butler, but was continued during the pendency of the stockholders’ suits attacking its validity and by the interlocutory decree of the state court in 1935 until the final decree of the state court and the consequent quitclaims by the Idaho Copper Co. of all its interest in the property in 1937.
It is true, as contended by the respondent, that the computations in the record as to the value were based largely on estimates. Such estimates, however, were based mostly upon facts in the record which were uncontroverted and which, standing alone, are sufficient ground for attributing to the stock a substantial potential value. It is not disputed that exploratory examinations of the mining property by diamond drilling and tunneling carried on by competent mining engineers had shown vast stores of recoverable copper ore containing valuable deposits of gold and silver; that the ore veins were of substantial size, from 60 to 70 feet thick, and easily mined; that the climatic conditions were favorable; that facilities for mining, such as water power and timber, were available in the vicinity; and that development, preliminary to operation, including a connecting road to within a few miles of the property, had been done at a cost of approximately $1,250,000. In this situation we think the stockholders’ hopes and expectations of refinancing the corporation’s debts or of obtaining a lessee under the terms and conditions of the interlocutory decree of the state court and liquidating the debts through payment of royalties, thus recovering the Red Ledge property, were reasonable. These hopes and expectations were not abandoned until the state court issued its final decree and the Idaho Copper Co. quitclaimed its interest in the property to Butler in 1937. Not until this event happened could it be definitely determined that there would be a loss or the amount of it. Morton v. Commissioner, supra. We hold that the stock of the Idaho Copper Co. had a potential value on January 1, 1937, and that it became worthless during that year.
*602 Respondent concedes that petitioner’s cost of the 1,150,238 shares of Idaho Copper Co. stock and his basis for the computation of loss, if any, was $134,039.27. Being of the opinion that petitioner sustained a loss in that amount, we hold that respondent erred in denying the claimed deduction.

Decision will be entered under Bide 50.

 Sec. 23 (e), Revenue Act of 1936—
(e) Losses bt Individuals. — In tlie case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
(1) if incurred in trade or business; or
(2) if incurred in any transaction entered into for profit, though not connected with the' trade or business; or
(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. No loss shall be allowed as a deduction under this paragraph if at the time of the filing of the return such loss has been claimed as a deduction for estate tax purposes in the estate tax return.
Art. 23 (e), Regulations 94—
Aht. 23 (e)-l. Losses 6y individuals. — Losses sustained by individual citizens or residents of the united States and not compensated for by insurance or otherwise are fully deductible if (a) incurred in the taxpayer’s trade or business, or (b) incurred in any transaction entered into for profit, or (c) arising from fires, storms, shipwreck, or other casualty, or theft, and a deduction therefor has not prior to the filing of the return been claimed for estate tax purposes in the estate tax return, or (d) if not prohibited or limited by any of the following sections of the Act: Section 23 (g), relating to wagering losses; section 24 (a) (6), relating to losses from sales or exchanges of property between members of a family or between a corporation and its shareholders; section 112, relating to recognition of gain or loss upon sales or exchanges of property; section 117, relating to limitation on losses recognized by section 112 upon the sale or exchange of capital assets; section 118, relating to losses on wash sales of stock or securities; section 251," relating to income from sources within possessions of United States; and section 252, relating to citizens of possessions of United States. See Section 213 as to limitation upon losses sustained by nonresident aliens.
In general losses for which an amount may be deducted from gross income must be evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period for which allowed. Substance and not mere form will govern in determining deductible losses. Pull consideration must be given to any salvage value and to any insurance or other compensation received in determining the amount of losses actually sustained. See section 113 (b).
[[Image here]]